James M. Varnum, Referee.
The value of legal services rendered in any ordinary suit or transaction is usually settled and adjusted between the parties, who, from their familiarity with the business from its inception to its close, are the most competent to judge of their value, namely, the lawyer who has rendered the services and the client who is to pay for them.
If they concur in their estimate of value their agreement is final, and it is no concern of the public as to what standard or measure of value may have been the basis of that agreement.
If they do not concur, and it falls to the court to decide between them, it frequently becomes a difficult }and embarrassing matter to fix upon the just and proper compensation, even though both parties have been able to present their respective sides of the case to the court, and have bqen competent to fully protect their own interests.
The embarrassment is greatly increased where any of the parties are from any cause unable to fully protect their interests, for in such case the additional responsibility is thrown upon the court of carefully looking after and guarding the interests of those who cannot protect themselves.
No stronger illustration can be presented than the case of an insolvent corporation, such as a savings bank or an insurance company.
When such a corporation passes into the hands of a receiver, but little or no power remains to the depositors, policyholders or creditors, to protect their interests in the assets of the corporation, for the receiver *17 has almost absolute power of management, and although nominally representing the creditors, still, his interests may in some respects not be wholly identical with theirs, as, for example, in "relation to the expenses of the administration of the estate of the insolvent corporation.
It follows, that it is the duty of the court and of' the attorney-general as representing the State, to exercise a careful supervision in such cases, and particularly to scrutinize the propriety and tile amount of all allowances for expenses or counsel fees in the administration of the receivership, and especially at the present time, in view of the fact that a number of grave abuses hi the management of such trusts have been brought to light during the last few years, which have tended to impair the confidence of the public in the efficiency of the protection afforded by the supervision of such matters by the court.
In estimating the value of legal services, the only principle laid down by our courts is that the counsel or attorney should be awarded as compensation what his services are reasonably worth (Van Every v. Adams, 42 Super. Cl. [J. & S.] 126; Stow v. Hamlin, 11 How. Pr. 452; Parsons on Costs, 11, &c., &c.).
But it is no easy matter for a third person to estimate with any accuracy the reasonable worth of complicated and long continued professional services.
For certain services of a mechanical or routine character, for certain formal proceedings or transactions, either the law has laid down or custom has fixed certain charges which are deemed a proper and fair compensation ; but for those services which are rendered by the intelligent and educated lawyer in the trial or argument of difficult cases, in the study and investigation of intricate and novel questions of law, calling for special intelligence, labor or ability, no regular tariff or measure of value can be fixed, not only because- *18 of the natural difference as between lawyers in ability and experience or in aptitude for special branches of law, but also because so much depends upon the peculiar characteristics, or the relative importance of the special service under consideration.
But-while we have no definite measure of value for such services, there are, nevertheless, certain elements, which I think can properly be taken into consideration in estimating and deciding as to what professional services, in a case like the one under consideration, are reasonably worth.
These may be epitomized as follows:
I. As TO THE LITIGATION OR BUSINESS ITSELF.
A. The amount involved.
Kentucky Bk. v. Combs, 7 Pa. St. 543; Harland v. Lilienthal, 53 N. T. 438, 441; Garfield v. Kirk, 65 Barb. 464, 467, 468; Betts v. Betts, 4 Abb. N. C. 317,443.
B. The interests involved (meaning the relative importance to the clients of success or failure).
See cases above cited.
C. The questions of law involved, their intricacy, difficulty or novelty.
Betts v. Betts ; opinions Sctjdder, Referee, and Van Vorst, J., 4 Abb. N. 0. 317, 441, 444 ; Pullings Law of Attorneys, c. 8, pt. 2, § 2 ; Weeks on Attorneys, 568, and cases cited.
D. The labor and responsibility involved, both in the executive and practical management of the matter, and in the treatment of the legal questions.
See cases above cited: and also,
E. The result of the service;—whether or not the litigations were successful, or the transactions *19 carried through successfully in the manner designed.
II. As TO THE LAWYER.
A. The learning required, and the scope and thoroughness of his learning.
B. The labor performed by him, his “tact and judiciousness of movement,” his perfect integrity and his assiduity in the interest of his client.
Betts v. Betts, 4 Abb.- N. O. 317, 439-444.
Applying the principles and rules above laid down to the case under consideration, I have devoted much time and attention to the investigation of the nature and character of the services rendered therein, and have had, in the investigation, the valuable assistance and hearty co-operation of the counsel for the1 receiver and of the representative of the attorney-general.
Much testimony has been taken before me,- covering the details of all the services rendered, and both of the counsel for the receiver have not only testified at length touching the actual items of their account, but have also explained in extenso the leading questions of law involved in all of the principal litigations and transactions.
I have also taken the testimony of three gentlemen of high standing at the bar, -in part touching the value of certain of the services rendered with which they were personally familiar, and also as experts relative to the general value of professional services of the character rendered by the receiver’s counsel.
I submit herewith the stenographer’s notes of the testimony taken before me, covering some 314 pages, and I also submit, as a part of my report, marked as a schedule, the carefully- prepared printed brief furnished by the receiver’s counsel, containing an itemized statement of their charges, with full explanations *20 as to the nature and character of all the services rendered.
As the result of my investigations, I report as folíolos :
The services in question extended from the date of the appointment of the receiver on September 28, 1876, down to January 1, 1881.
They have been in a marked degree characterized by all of the conditions of value which .1 have heretofore laid down as elements of importance in estimating the reasonable worth of professional services.
When the bank failed, its liabilities to 3,339 depositors were over §1,288,000, while its assets were of a miscellaneous character, many of them very unavailable, or much depreciated in value, and some of them wholly worthless.' The receiver has already paid dividends to the depositors amounting to 80 per cent., and still has a large amount of assets on hand which will probably prove ultimately available. In my report on the receiver’s accounts, his administration has been characterized by me as “wise, careful, economical and for the best interests of the depositors and creditors.” This is, in my judgment, in a large degree due to the judicious and able advice of his counsel, who have been consulted as to every step that has .been taken, and who have guarded every act of the receiver, by obtaining in all cases and prior to any action the sanction and approval of the court thereto.
The labor and responsibility entailed upon the counsel has been very great, and the value of their services has already been manifested in a most substantial manner, not only by the dividends already declared, but also by the fact that no inconsiderable part of the amount thus distributed in dividends has been collected from the trustees of the bank as the result of the sxiits against them instituted and prosecuted by the receiver’s counsel, an amount more than *21 sufficient to pay all of the expenses of the trust until its termination.
The services for which compensation is asked, are of two general classes :
1st. Services in suits and litigations.
2nd. General services.
I consider the suits and litigations as properly susceptible of a further subdivision into ;
(a) Suits for the realization or collection of assets.
(5) Suits against trustees or officers of the bank based on their misfeasance or malfeasance in office.
The former class include eight distinct suits or negotiations, amongst which are,—four suits on the bonds of the towns of Thompson, E. Y., and Woodside and Kearney, E. J., to test their validity, or for the collection of principal or interest, viz.: Paine v. Town of Belleville, Paine v. Town of Kearney, Paine v. City of Newark, Perrine v. Town of Thompson; one litigated foreclosure suit (Paine v. Farley); one troublesome creditor’s bill (Paine v. Wright), and one other suit of small importance (Paine v. Mead).
I have carefully considered the character and importance of the services rendered in the above suits, and without deeming it necessary to give the details on which my opinion is based, I report and allow the sum of $2,150 for services therein.
By far the larger part of the suits and litigations were actions brought by the receiver against the trustees of the bank or their representatives, instituted for the purpose of holding them responsible for losses caused to the bank through their misfeasance or malfeasance in office.
The basis of such claims were:
Illegal or improper investments in loaning the *22 funds of the bank on property “of insufficient value,” “out of the State,” “unproductive,” or in which a trustee of the bank was interested as owner, or in making larger loans to any one individual than the charter allowed.
Illegal purchases of real estate (a trustee being the owner thereof).
Illegal action in declaring dividends,—not earned, or in contravention of the provisions of law.
The amount of labor necessary to obtain the data on which to base any action can readily be imagined, but as this will be considered under the head of “general services,” it will not be taken, into consideration in estimating the value of the services in these litigations.
The services under consideration commenced with a voluminous petition to the court for leave to sue the trustees, wherein the counsel set forth at length the alleged breaches of trust, and discussed the law and facts in extenso, presenting both the strong and weak points on their side of the case, and asking for the instruction of the court. Authority was first granted to bring one test suit, and subsequently, when the prospect of success seemed brighter, the authority was extended to other cases.
In all, more than twenty suits were commenced, but some of them were not prosecuted, and compensation is only claimed for services in eleven actions.
In their carefully prepared itemized bill, the counsel have given their estimate of the value of their services in each of these suits separately, but I have preferred, and I think with propriety, to consider all of these actions as merely the incidents in an important litigation, which can with justice be taken into consideration in estimating the measure of compensation, but among which that compensation cannot be *23 apportioned with any accuracy, except, perhaps, by those who have rendered the service.
To enter into a detailed statement as to all of the legal points involved, and proceedings had in these suits, would lengthen my report beyond what is either necessary or desirable.
Prom my careful examination I find that the services rendered merit and should receive a large compensation.
The immense amount of labor expended and time occupied can only be appreciated by one who has carefully looked into the subject.
Numerous legal questions were involved, many of them difficult and intricate, and some of them of an entirely novel character, for these suits were really the pioneers in a new field of litigation heretofore not thoroughly or successfully explored.
The actions were all vigorously contested at every stage of their progress, and the ultimate successful termination of the litigation was in great measure due to the persevering industry and unremitting labor of the receiver’s counsel. Every step in the litigation bears its own testimony to the truth of this statement. As an illustration I may state that in one action the “points” of the receiver’s counsel on appeal covered one hundred and thirty printed pages ; in two other cases forty-nine and forty-eight- pages respectively; and in several other suits from twenty-six to thirty-five pages each ; while a glance at these carefully prepared arguments will clearly indicate the importance and the difficulty of the questions involved.
The interests involved in these litigations were very great, for more than thirty-three hundred depositors, many of them doubtless poor and needy, were vitally interested in the dividends declared, and in having the estate of the insolvent corporation so administered as to yield them the largest possible returns. The sue *24 cess or failure of the attempt to ■ render the trustees liable for their sins of omission or commission was to them a matter of the gravest moment.
Finally, the resulté of this litigation, in a pecuniary point of view, have fully justified the course of the receiver" s counsel, and have given a more substantial value to their services, than they could otherwise have had, for although these suits have not been settled as to all the parties, the rec’eiver has nevertheless already collected from a number of the defendants in settlement of the claims against them the sum of $111,500. In valuing the services rendered and the amount of the recovery, it is but reasonable for us to bear in mind that the sum collected was really “a brand saved from the burning,” for when these suits were commenced the law was uncertain, the facts were obscure, and the chances all seemed to be against the success of the litigation, especially in a pecuniary point of view.
In examining the claim of the counsel for the value of services rendered' in this class of litigations, it has seemed to me, as a result of the mode in which their statement is made out, viz. : charging for each of these suits separately, that they have hardly given sufficient allowance to the similarity of some of these suits to others, and to the fact that the services performed in one have in many instances lightened the labor in others to a material degree.
I report, as in my judgment a proper compensation for the services of the receiver’s counsel in this litigation, the sum of $18,600.
I think that in view of the amount of the recovery, and the importance and character of the services as hereinbefore set forth, this allowance cannot be deemed . excessive (See Betts v. Betts, 4 Abb. N. C. 317, 439 [where compensation allowed was $20,000]; Brown v. Mayor, &c. of N. Y., 11 Hun, 21, 25, 26 [-where costs and allowances were $6,459, in a difficult case where *25 the recovery was only $35,000] ; Rose v. Spies, 44 Mo. 20 [where allowance was 20 per cent, on recovery]).
The receiver’s counsel also claim an allowance for general services during a period of more than four years and a quarter.
By general services are meant “services not embraced in suits or their settlement, or in the petition for leave to sue.” These include:
Investigations into the character and value of the assets, and services in their collection or disposition.
Investigations of all of the books, of the bank, and especially prolonged and laborious researches into all of the transactions of the trustees for a series of years, in order to ascertain what, if any, of their acts had been illegal, improvident cr ultra vires.
Services in relation to the management and disposition of the real estate, which were of a complicated and troublesome character.
Constant consultation with the receiver, depositors, officers, trustees and debtors, in relation to the affairs of the receivership.
Services in preparing and drawing „ innumerable legal papers necessary in the routine business of the receivership.
Applications to the court for instructions as to all the proceedings of the receiver, including the obtaining of more than fifty-eight separate orders of court, on as many petitions.
Services in connection with four annual accountings of the receiver before referees.
Legal investigations and advice in relation to numerous questions arising continually in the administration of the receivership.
The value of such services can only be determined from a consideration of the general character which the experience of every lawyer will tell him they must have possessed.
*26 Services of- this kind make no perceptible show in proportion to the labor performed or time occupied, and yet they are frequently more arduous than services in important litigations, and consume a large amount of time, which is especially valuable to a lawyer, as it is part of his capital.
It is obvious that for an insolvent corporation the general services of the counsel must be much more frequently called into requisition than for a company in full operation. In the latter case legal questions and differences are only the incidents of ordinary business, while in the former case they constitute the general and normal condition of affairs. In a trust of the magnitude of the one under consideration, innumerable questions, all taking time, and many of them difficult and imposing responsibility, are precipitated upon .counsel.
The suits actually brought are no criterion as to the number of transactions which have to be investigated and studied.
A receiver,' moreover, occupies a peculiar position. All of his actions are open to the notice and criticism of the general public, as well as of numberless parties in interest, and he is liable to be held responsible for every act. For him, more than for most ordinary clients is the constant advice and guidance of counsel necessary. In the case under consideration. I have already stated that the receiver has constantly sought the advice of his counsel and has been wisely and prudently directed by them.
To keep a client straight for four years and a quarter in administering a trust estate of about $1,200,000, where many of the assets are of uncertain value or doubtful character is certainly a service which merits and should receive a suitable compensation.
The counsel claim that their general services for the period named are worth $10,000. It is quite possible *27 that a private client who had been served as faithfully well might not hesitate to pay that amount, but acting as I am acting, in a judicial capacity, and as to money which is not my own, I am constrained to believe that $8,000 would be a reasonable compensation for these services, and I so report.
The disbursements are allowed at $1,499.71.
The payments heretofore made by order of the court to Messrs. Barlow and Olney, amounting to $18,350, should be approved, and a further payment be made to them of $10,500, in full settlement for their counsel fees, to the day of January, 1881, in accordance with the recommendations of this report, together with the amount of their disbursements as allowed.
On a motion to modify and confirm the referee’s report, the following opinion was rendered :
Westbrook, J.
My continued engagements in court prevent an extended opinion.
The report of Mr. Varnum is well considered and clear. The elements which should enter into the accounts in determining the value of legal services are very clearly stated, and are very just. I regret, therefore, to differ from him as to allowance to be made to counsel. I have personally examined the bill of Messrs. Barlow & Olney, and their detailed statement, and I regard their bill as very reasonable in every respect. With their full, and complete statement, and the evidence of Messrs. Peckham, If ash, Dunning and others as to value of their services, and no opposing testimony, the bill should have been allowed as rendered.
This trust, most admirably executed, is a monument to the fidelity, integrity and intelligence of both the receiver and his counsel, and so the referee has found.
Over $115,000 collected by litigation, and saved, as *28 the referee has found, “ like a brand from the burning” entitled the counsel who saved it to the sum of §22,646.
I cannot elaborate—the detailed statement, and the opinions of reliable witnesses compel me to differ from the referee, and allow the bill as presented.